Jeffrey R. Oritt (USB No. 2478)
Cohne|Kinghorn
111 East Broadway, 11th Floor
Salt Lake City, UT  84111
Phone:  (801) 363-4300

Craig K. Vernon (USB No. 16737)
James, Vernon & Weeks, P.A.
1626 Lincoln Way
Coeur d'Alene, ID  83814
Phone:  (208) 667-0683

*Attorneys for Plaintiff*

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MCKENNA DENSON,<br><br>Plaintiff,<br><br>vs.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation; and JOSEPH L. BISHOP,<br><br>Defendants. | Case No. 2:18-cv-00284-BCW<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>Magistrate Judge:  Brooke C. Wells |

COMES NOW the Plaintiff, MCKENNA DENSON, by and through her attorneys of record, and submits PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS.

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS - 1

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 3

II.     STATEMENT OF FACTS .................................................................................. 4

III.    ARGUMENT ....................................................................................................... 7

        A.      PLAINTIFF LEARNED OF THE FALSITY OF DEFENDANTS'
                REPRESENTATION IN DECEMBER OF 2017, THEREFORE, HER FRAUD
                CAUSES OF ACTION ARE NOT TIME-BARRED ........................................... 8

        B.      DEFENDANTS' FRAUDULENT CONCEALMENT TOLLS THE STATUTE
                OF LIMITATIONS RELATING TO PLAINTIFF'S EMOTIONAL DISTRESS
                CAUSES OF ACTION ..................................................................................... 12

IV.     CONCLUSION .................................................................................................. 14

## I.      INTRODUCTION

Defendants argue that, because of the passage of time, the respective statutes of limitations have run.  However, under the facts of this case, the statutes of limitations relating to the fraud and emotional distress causes of action are tolled because Defendants concealed from Plaintiff, McKenna Denson ("McKenna"), the dangers lurking at the Missionary Training Center ("MTC").  Defendants are correct that it was 34 years ago when this rape occurred.  That is when Defendant Bishop lured McKenna, a trusting and obedient sister missionary, down the stairs into a dark and dingy accessory hallway of the MTC and into his secret room.  There, in that hidden and secret room, he raped her.

McKenna knew she was sexually assaulted when the rape happened; however it was Defendant Bishop's prior acts, that he had disclosed to Defendant Corporation of the President of the Church of Jesus Christ of Latter Day Saints ("COP"), that were unknown to McKenna until December of 2017.  Despite concealing these facts, Defendants argue that the claims brought by McKenna are time-barred under Utah Code § 78B-2-305 and Utah Code § 78B-2-307.  However, because of Defendants' ongoing concealment of the truth, McKenna only recently discovered what Defendants had been hiding -- that prior to ever being called as MTC President in 1983, Defendant Bishop had engaged in sexual improprieties and acts of sexual predation -- and Defendant COP knew about it.  Several years prior to his call as MTC President, Defendant COP called Defendant Bishop to be a mission president in Argentina.  There, Defendant Bishop disclosed his sexual improprieties and acts of sexual predation against women to Defendant COP's highest-ranking official in South America.

Instead of informing McKenna of the truth about this self-proclaimed, lifelong sexual predator, Defendants represented to McKenna, the public, and members of the Church that

Defendant Bishop was a safe, honorable, and trustworthy leader.  This fraudulent representation was bolstered by Defendant COP's Apostle, Gordon B. Hinkley, calling and elevating Defendant Bishop to the position of MTC President in 1983.

The discovery rule in Utah Code § 78B-2-305(3) applies to McKenna's Common Law Fraud causes of action, and the general discovery rule applies to the other causes of action. Defendants ignore what the law recognizes in dealing with claims of a fraudulent nature: "a party can be injured by fraud and, through no fault of his or her own, not know it at the time of injury." *Donner v. Nicklaus*, 197 F.Supp.3d 1314, 1325 (D. Utah 2016) (citing *Shiozawa v. Duke*, 2015 UT App 40, ¶ 13, 344 P.3d 1174; *Russell/Packard Development Inc., v. Carson*, 2003 UT App 316, ¶ 21, 78 P.3d 616, 622.  Here, McKenna was not aware of Defendant COP's knowledge of, and complicity with, Bishop's prior sexual predation, including the fact that Defendant COP knew that Defendant Bishop was a sexual predator before and during the time she was raped in the secret room at the MTC in 1984.  She only became aware of this recently, in December of 2017. Therefore, her causes of action did not accrue until that time.

Accordingly, Plaintiff respectfully requests that the motions to dismiss filed by Defendants be denied.

## II.   STATEMENT OF FACTS[1]

Defendant Bishop admits to being a sexual predator and sexual addict his entire adult life going back to when he was a young missionary for Defendant COP.  He further admits to engaging in a pattern of inappropriate sexual conduct toward women throughout his life. *Id.*  These red flag sexual improprieties were disclosed to Defendant COP prior to Defendant Bishop being called by

---

[1] The Court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

future COP President, Gordon B. Hinckley, to be the MTC President.  This includes red flag sexual improprieties with a young woman while serving as a young missionary in Argentina.  It also includes similar sexual improprieties while serving in a bishopric in Florida.  Bishop admits to disclosing some details of inappropriate sexual actions toward women to his mission president and to his church leaders in Florida. *Compl.,* ¶ 16.

Before ever serving as a Mission President, Bishop was the President at Weber State University (at that time Weber State College).  While in that position, there were claims, known to church leaders, that Bishop acting inappropriately toward women and allegations of dishonesty and lack of integrity. *Compl.,* ¶ 17

Despite these previous disclosures to church leaders, Bishop was called as President of the Buenos Aires North Mission in Argentina in approximately 1978, where he was placed in charge of hundreds of young missionaries, male and female.  The General Authority and highest-ranking church official in charge of the Church's activities in this area at that time was Elder Robert E. Wells. *Compl.,* ¶ 18

Elder Wells was sustained as a General Authority and member of the First Quorum of the Seventy in October 1976.  Beginning in 1977 and thru the time Defendant Bishop was Mission President in Argentina, Elder Wells served as the Church's area representative for Chile, Argentina, Paraguay and Uruguay.  In this role, he was responsible for the activities of the area missions and their leaders, including Bishop. *Compl.,* ¶ 19

During his tenure as Mission President in Argentina, Bishop counseled one of his sister missionaries who was "besieged with evil spirits."  According to Bishop, those evil spirits then attacked him.  Frightened, and in an effort to "save his soul," he decided to confess or disclose all of his previous sins.  Bishop met with Elder Wells and disclosed to Elder Wells every indiscretion,

sin, or other misdeed that had occurred up to that point in his life.  This would necessarily include his sexual addiction and previous instances of sexual predation against women.  Elder Wells gave Bishop a blessing; triggering a belief by Bishop that he was forgiven.  As evidence of this, Bishop claims that the baptisms in the Argentina mission, over which he presided, went from 70 to over 400 per month, following his disclosure to Defendant COP of his past red flag sexual improprieties. *Compl.,* ¶ 20.

Following this disclosure to Elder Wells, there is no indication that the Church took any action to investigate these possible crimes or investigate whether, under its own internal policies, Bishop would be subject to church discipline.  Any of these actions could have alerted McKenna and other vulnerable women to Bishop's dangerous propensities. *Compl.,* ¶ 21.

In an epic betrayal of institutional trust, instead of effectuating the prosecution and/or discipline of Bishop for these red flag sexual improprieties, some of which were likely criminal, just the opposite occurred; Defendant COP called Bishop to be the President of the MTC in Provo, Utah.  There, instead of having access to hundreds of young missionaries, the Church elevated him to a position of power over thousands of young women training to enter the mission field. *Compl.,* ¶ 22.

Empowered by Defendant COP's lack of concern and apparent condoning of his sexual predation against women, in 1984, while President of the MTC, Defendant Bishop began to groom McKenna.  McKenna and several other sister missionaries, who had been subjected to traumatic childhoods, were frequently pulled from class and into Bishop's office and asked questions about their experiences.  After several of these meetings, Bishop began to bring McKenna to his office alone. *Compl.,* ¶ 23-28.

After several one-on-one meetings, Bishop, exploiting his Mission President mantle, lured

McKenna to a secret, windowless room in the basement of the MTC.  There, Bishop sexually assaulted and raped her by forcibly penetrating her. *Compl.,* ¶ 29-31.

In approximately 1987 or early 1988, McKenna revealed the details of this sexual assault, including Bishop's identity as the sexual assaulter, to her local bishop.  It is believed that this local bishop reported the incident to the local stake president, whom it is believed reported the incident to church headquarters in Salt Lake City.  Shortly thereafter, Elder Carlos Asay, a member of the First Quorum of the Seventy at the time, interviewed McKenna and told her he would investigate the incident and let her know of the outcome.  Nothing came of the investigation however; Defendant COP never reported back as to whether any investigation even took place.  McKenna was left isolated.  As a result, despite McKenna's efforts, there was nothing at this point that would alert her about Defendant Bishop's prior acts of sexual predation or Defendant COP's knowledge of such acts. *Compl.,* ¶ 32.

Indeed, Plaintiff did not learn of Defendant Bishop's prior sexual improprieties and sexual predation against women (going back to when he was a young LDS Missionary), and Defendant COP's knowledge of these acts, until December of 2017, when Bishop told McKenna of these acts, and, that prior to becoming President of the MTC, he had confessed this to Elder Wells. *Compl.,* ¶¶ 16 n. 6; 70.

### III.    ARGUMENT

The facts, as alleged in the Complaint, outline Defendants' fraud, and their concealment of this information from Plaintiff and others.

Under Utah Code § 78B-2-305(3), a claim of fraud must be brought within three years, except where an aggrieved party has not discovered "the facts constituting the fraud or mistake."  Both of McKenna's fraud claims are tolled per this statute, because each of "these causes of action

are grounded in fraud." See *Rabo Agrifinance Inc., v. Bliss*, 227 F.Supp.3d 1249, 1252 (D. Utah 2017).

Additionally, it is Defendants' fraudulent concealment of the truth that also tolls the statute of limitations for McKenna's tort claims of Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress. The discovery rule is applied "[i]n situations where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct." *Russell/Packard*, 2003 UT 316, ¶ 13, 78 P.3d at 620 (citing *Warren v. Provo City Corp.,* 838 P.2d 1125, 1129 (Utah 1992)).

The determination of when the aggrieved party reasonably should have known of the facts forming the basis of the party's fraud claim is a question of fact. *Sevy v. Security Title Co.,* 902 P.2d 629, 634 (Utah 1995); *Hodges v. Howell,* 2000 UT App 171, ¶ 15 n. 3, 4 P.3d 803. Indeed, at what point a party should have reasonably discovered its claim is a fact-intensive inquiry that "preclude[s] judgment as a matter of law in all but the clearest of cases." *Nolan v. Hoopiiaina (In re Hoopiiaina Trust),* 2006 UT 53, ¶ 37, 144 P.3d 1129, 1141.

A.   **PLAINTIFF LEARNED OF THE FALSITY OF DEFENDANTS' REPRESENTATION IN DECEMBER OF 2017, THEREFORE, HER FRAUD CAUSES OF ACTION ARE NOT TIME-BARRED**

**<u>Common Law Fraud</u>**

Plaintiff's Common Law Fraud cause of action was timely filed within three years of the discovery of the "facts constituting the fraud." Utah Code § 78B-2-305(3). While "it is not necessary for a claimant to know every fact about his fraud claim before the statute begins to run," the discovery rule "tolls the limitations period until facts forming the basis for the cause of action are discovered." *COP's Motion to Dismiss* at 6 (citing *Baldwin v. Burton*, 850 P.2d 1188, 1197 (Utah 1993)); *Russell/Packard*, 2003 UT 316, ¶ 13, 78 P.3d at 620 (citing *Spears v, Warr*, 2002

UT 24, ¶32, 44 P.3d 742, 753).  Here, Defendants concealed the fact that Defendant Bishop was a sexual predator and had a long history of sexual improprieties prior to his tenure as MTC President. Defendants represented to Plaintiff just the opposite: that the MTC President was safe, trustworthy and not a sexual predator.  This fraud was only discovered by Plaintiff in 2017 as part of a recorded conversation with Defendant Bishop. *Compl.,* ¶ 70.

To prove a claim for Common Law Fraud in Utah, a plaintiff must prove, among other things "(1) that a representation was made . . . (4) which the representor . . . (a) knew to be false. *Shah v. Intermountain Healthcare Inc.*, 2013 UT App 261, ¶ 11, 314 P.3d 1079, 1085 (citing *Armed Force Ins. Exch.*, 2003 UT 14, ¶ 16, 70 P.3d 35, 40).  Defendants advertise and teach its members that its leaders, especially high-level leaders like MTC Presidents, are "safe, honorable, and trustworthy."  Here, Defendant Bishop was even called by an Apostle of Defendant COP to be the MTC President.  This serves to certify to its members that this man is not a sexual predator because mission callings, including that of mission presidents, are made "by revelation through the Lord's servants, the prophets." *Compl.,* ¶ 10, 11 and 14.  Defendants represented that Bishop was "safe, honorable and trustworthy," and knowingly withheld information about his lifelong sexual addiction and sexual predation against women.  Therefore, this representation, without the appropriate warnings of Bishop's dangerous past propensities, was false. *Compl.,* ¶ 68.

Then, several years after she was raped, McKenna reported Defendant Bishop's sexual assault to local leaders of Defendant COP and to one of its General Authorities, Carlos Asay. Despite McKenna's best efforts to seek answers, Defendants revealed nothing that would have led her to believe that Defendant Bishop had these prior red flag sexual improprieties, of which Defendant COP had knowledge.  This is verified by the fact that Defendant COP took no action to

investigate or discipline Bishop. *Compl.,* ¶ 32. In doing so, each Defendant continued the pattern of concealing the truth.

McKenna finally learned of Defendant Bishop's prior conduct, and that Defendant COP knew of this prior conduct, in December of 2017, when she confronted and recorded the very man who raped her. ¶ 16, ln. 6. Therefore, the discovery rule of the Utah Code applies, tolling the accrual of this cause of action, until December of 2017, the time of Plaintiff's discovery.

### **Fraudulent Concealment or Nondisclosure**

As to Plaintiff's Fraudulent Concealment or Nondisclosure cause of action, it is similarly timely under the discovery rule of Utah Code § 78B-2-305(3). While "it is not necessary for a claimant to know every fact about his fraud claim before the statute begins to run," if the plaintiff can make "a prima facie showing of fraudulent concealment and then demonstrate[e] that, given the defendant's actions, a reasonable plaintiff would not have discovered the claim earlier," the statute of limitations is tolled. *COP's Motion to Dismiss* at 6 (citing *Baldwin*, 850 P.2d at 1197); *Hill v. Allred*, 2001 UT 16, ¶ 17, 28 P.3d 1271, 1276 (citing *Berenda v. Langford*, 914 P.2d 45, 51 (Utah 1996)). It is such concealment and activities by Defendants that Plaintiff argues makes her claim for Fraudulent Concealment or Nondisclosure timely and proper.

Under a Fraudulent Concealment or Nondisclosure claim, a plaintiff must prove "(1) that the nondisclosed information is material, (2) that the nondisclosed information is known to the party failing to disclose, and (3) that there is a legal duty to communicate . . . ." *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 10, 143 P.3d 283, 286 (citing *Mitchell v. Christensen*, 2001 UT 80, ¶ 9, 31 P.3d 572, 574). In the instant case, the nondisclosed information was clearly material: Defendant Bishop was a self-proclaimed sexual predator which put sister missionaries who obeyed him at risk of being sexually assaulted. *Compl.*, ¶ 16. Further, Defendants were aware of

Defendant Bishop's sexual predation against women. *Compl.*, ¶ 16 n. 6. Finally, Defendant COP, who teaches its members, and especially its missionaries, to obey their leaders, had a duty to warn its sister missionaries, like McKenna, that the MTC President was a sexual predator -- a wolf in sheep's clothing.

Defendant COP cites to *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 18, 156 P.3d 806 to support its argument. The instant case, however, is factually distinguishable from *Colosimo*. In *Colosimo*, the Court suggested that to rely on a claim of fraudulent concealment a plaintiff "must have actually made an attempt to investigate his claim and that such attempt must have been rendered futile as a result of the defendant's fraudulent or misleading conduct." *Id.* at ¶ 40, 156 P.3d at 817. In that case, the Plaintiff made no such inquiry into whether the institutional Defendant knew of the evil propensities of their abuser, prior to being abused. *Id.* at ¶50, 156 P.3d at 819.

Our case is different. Here, McKenna investigated her claim. She reported the sexual assault to her local ecclesiastical leader, and then to a General Authority of Defendant COP, Carlos Asay. Nothing was done to investigate the crime committed against her, and she was stonewalled. Moreover, both Defendants continued to perpetuate the fraud by remaining silent about Defendant Bishop's sexual predation proclivities prior to the sexual assault he perpetrated against McKenna.

In *Doe v. Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 837 F.Supp.2d 1145 (D. Idaho 2011), *certifying questions by Doe v. Boy Scouts of America*, 159 Idaho 103 (2015), a factually similar case with a similar tolling statute, the Federal District Court of Idaho found that a former boy scout, who was molested by his Church of Jesus Christ of Latter-Day Saints priesthood leader and scout leader in the late 1960's, timely filed his fraud claim. In *Doe*, the Plaintiff did not discover the Defendants' fraud until sometime in 2007 or 2008 when

Plaintiff learned from files in the Boy Scout national office that there were problems with that Scoutmaster molesting young boys as early as the mid-1960's.  This created at least a factual issue for the federal court of when there was knowledge of the facts constituting the fraud.  *Doe v. Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 837 F.Supp.2d 1145, 1153 (D. Idaho 2011), *aff'd*, *Doe v. Boy Scouts of America*, 159 Idaho 103, 111 (2015).  Similarly, in the instant case, a factual issue exists that precludes dismissal at this early stage.

Regarding whether a reasonable plaintiff would have discovered the claim earlier: "[t]he determination of when the aggrieved party reasonably should have known of the facts forming the basis of the party's fraud claim is a question of fact."  Indeed, at what point a party should have reasonably discovered its claim is a fact-intensive inquiry "that should properly be the turf of a finder of facts." *Shiozawa*, 2015 UT App 40, ¶ 14, 344 P.3d at 1180 (2015) (citing *Sevy v. Security Title Co.*, 902 P.2d 629, 634 (Utah 1995); *Hodges v. Howell*, 2000 Utah App 171, ¶ 15 n. 3, 4 P.3d 803; *Nolan v. Hoopiiaina* (In re *Hoopiiaina Trust*), 2006 UT 53, ¶ 37, 144 P.3d 1129).

In the instant case, McKenna looked for answers from Defendant COP.  However, Defendant COP ignored her and Defendants covered up Bishop's horrendous actions; therefore, a reasonable plaintiff would not have discovered Defendants' fraudulent concealment earlier.

## B.   DEFENDANTS' FRAUDULENT CONCEALMENT TOLLS THE STATUTE OF LIMITATIONS RELATING TO PLAINTIFF'S EMOTIONAL DISTRESS CAUSES OF ACTION

Plaintiff's Negligent Infliction of Emotional Distress ("NIED"), and Intentional Infliction of Emotional Distress ("IIED") causes of action meet the requirements for applying Utah's general discovery rule and are also not time-barred from relief.

Defendants are correct in their assertion that the four-year catch-all statute of limitations contained in Utah Code 78B-2-307(3) is the applicable statute of limitations for these claims.  See

*Bishop's Motion to Dismiss* at 4; COP's *Motion to Dismiss for Failure to State a Claim* at 5.[2]  With that said, Utah courts have applied the discovery rule to tort claims covered under the catch-all statute of limitations.  See generally *Olsen v. Hooley*, 865 P.2d 1346 (Utah 1993) (tolling the statute of limitations for IIED and NIED claims due to repression of memories).  In Utah, "the discovery rule tolls the limitations period until facts forming the basis for the cause of action are discovered." *Russell/Packard,* 2003 UT 316, ¶ 13, 78 P.3d at 620 (citing *Spears v. Warr*, 2002 UT 24, ¶33, 44 P.3d 742) (internal quotations omitted).

Utah courts have chosen to apply the discovery rule to tort claims in three circumstances: "(1) when the legislature has adopted the rule by statute; (2) when a defendant conceals the existence of facts giving rise to knowledge of a course of action; or (3) when application of the statute of limitations would be irrational or unjust . . . ." *Olsen*, 865 P.2d at 1348.  The second of these rules, the fraudulent concealment rule, "tolls a statute of limitations that does not contain a statutory discovery rule when the plaintiff does become aware of facts constituting the cause of action because they were affirmatively concealed by the other party . . ." *Donner*, 197 F.Supp.3d. at 1329.

Related to the sexual assault and battery causes of action, it is conceded that this was not concealed and that it relates to Defendant Bishop only.  This Court may apply the third prong above, "when application of the statute of limitations would be irrational or unjust," to toll this cause of action against Bishop.

Regarding whether McKenna should have discovered her emotional distress causes of action earlier, see discussion of why she was unable to discover the facts previously. *Supra*, at 9-

---

[2] Defendant COP however misstates the statute of limitations of Plaintiff's Sexual Assault & Battery claims as one year (applying a 1984 version of the statute rather than its present form).  Even if Defendant COP was correct about the proper period in which to bring an action, Plaintiff's action would still be timely and proper under the discovery rule.

10.  As Defendants concealed the fact that Bishop was a sexual predator, each Defendant prevented Plaintiff from having the basic knowledge necessary to form these causes of actions.  It is conceded that as to Defendant Bishop, McKenna knew she was sexually assaulted by him in 1984.  What she didn't know was that he was a life-long sexual predator prior to that time.  And, despite knowledge of this, Defendant COP still elevated Bishop of MTC President.   Furthermore, McKenna had no knowledge that Bishop was a sexual predator when he accepted his invitation to be MTC President.

While McKenna did not have the basic knowledge necessary to bring these claims, Defendants assuredly did possess such knowledge.  Defendant COP was aware of Bishop's sexual predation against woman and other red flag improprieties at the time of the disclosure to Elder Wells.  *Compl.,* ¶¶ 18-20.  Despite this knowledge, rather than taking steps to prevent such behavior from continuing, Defendant COP did the opposite: it elevated Bishop to a position of power over an even greater number of women. *Compl.,* ¶ 22.  Further, when McKenna reported her sexual assault to COP, it again did nothing to investigate the matter; rather its actions were an attempt to silence Plaintiff. *Compl.,* ¶ 32.  Defendants were jointly responsible for taking affirmative steps to prevent Plaintiff from having the requisite basis for her claims.

Defendants took steps to affirmatively conceal the facts necessary for McKenna to bring her claims, and a reasonable plaintiff would not have discovered these claims earlier.  Therefore, the statute of limitations for McKenna's NIED and IIED causes of action are tolled.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff respectfully asks this Court to deny Defendant Bishop's *Motion to Dismiss*, and Defendant COP's *Motion to Dismiss for Failure to State a Claim*.  At the

very least, this is a question of fact that cannot be disposed of based on the pleadings before the Court.

Defendants concealed their knowledge of, and complicity in, Defendant Bishop's evil activities, before he was elevated to the position of MTC President. This concealment even continued after Plaintiff reported the sexual assault to Defendant COP. Defendants tolled the accrual of McKenna's causes of action until December of 2017, when she discovered the truth about the dark secrets that pre-dated her time at the MTC.

Respectfully submitted this 12th day of June, 2018

COHNE|KINGHORN

JAMES, VERNON & WEEKS, P.A.
*Attorneys for Plaintiff*


By: _/s/  Craig K. V ernon_____
        CRAIG K. VERNON

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of June, 2018, I caused to be served via ECF/Email and/or U.S. mail, postage prepaid, a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS** to the foregoing:

David J. Jordan
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111

Andrew G. Deiss
John Robinson Jr.
DEISS LAW PC
10 West 100 South, Suite 425
Salt Lake City, Utah 84101

By:   */s/  Narda L. Anthony*