IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MCKENNA DENSON,<br><br>               Plaintiff,<br><br>v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation; and JOSEPH L. BISHOP,<br><br>               Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:18-cv-00284<br><br>District Judge Dale A. Kimball |

This matter is before the court on Defendants the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints' ("COP"), and Joseph Bishop's (collectively "Defendants") Motions to Dismiss. On July 18, 2018, the court held a hearing on the motions. At the hearing, the Plaintiff McKenna Denson ("Denson") was represented by Craig K. Vernon and Jeffrey R. Oritt. Defendant COP was represented by David J. Jordan and Wesley F. Harward and Defendant Bishop was represented by Andrew G. Deiss. The court took the motions under advisement. Based on the briefing filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order GRANTING in part and DENYING in part the COP's Motion to Dismiss and GRANTING Bishop's Motion to Dismiss in its entirety.

## BACKGROUND[1]

This case involves claims arising from an alleged sexual assault. In 1983, Bishop was called by the COP to be the President of the Mission Training Center (MTC). Bishop accepted the position and served as the President of the MTC in Provo, Utah from 1983 to 1986. Prior to being the President of the MTC, Bishop was the President of the Buenos Aires North Mission in Argentina from 1978 to 1982.

The Complaint asserts that Bishop is a self-proclaimed sexual predator and sex addict.[2] Compl., at ¶ 16. Bishop allegedly admits to being a sexual predator and sex addict his entire life and further admits to engaging in a pattern of inappropriate sexual conduct toward women throughout his life, including prior to being called as the MTC president. *Id*. Bishop's sexual improprieties include incidents with a woman while he was both serving as a young missionary in Argentina, and also as the Mission President in Argentina. *Id*. He also allegedly engaged in similar sexual improprieties while serving in a bishopric in Florida.[3] The Complaint asserts that "Bishop admits to disclosing some details of inappropriate sexual actions toward women to his mission president and to his church leaders in Florida." *Id*.

Prior to serving as a mission president in Argentina, Bishop was the President of Weber State University. *Id*. at ¶ 17. While in that position there allegedly were public claims, known to Church leaders, of Bishop acting inappropriately toward women and allegations of dishonesty and lack of integrity. *Id*.

---

[1] The background facts are taken from Denson's complaint. On a motion to dismiss all well-pleaded facts are presumed to be true. The court's role is to determine if the facts, as stated in the complaint, state a claim upon which relief may be granted.

[2] The Complaint states "Bishop admits in a December 2017 recording that has become public to being a lifelong sexual predator and having a sexual addiction. Throughout this interview, Bishop discloses several incidents with women, ranging from inappropriate behavior to full-on sexual assault and/or molestation."

[3] The Complaint is vague on the details of this incident.

Despite disclosing to Church leaders previous incidents of sexual impropriety, Bishop was called as President of the Buenos Aires North Mission in Argentina in approximately 1978, where he was placed in charge of hundreds of young missionaries, male and female. *Id* at ¶ 18.

In 1977, Elder Robert E. Wells was the Church's area representative for Chile, Argentina, Paraguay, and Uruguay. *Id*. at ¶ 19. Elder Wells was responsible for the activities of the area missions and their leaders, including Bishop. *Id*.

During his tenure as Mission President in Argentina, Bishop counseled one of his sister missionaries who was allegedly "besieged with evil spirits." *Id*. at ¶ 20. The complaint alleges that according to Bishop, those spirits attacked him. *Id*. To save his soul, he decided to confess all his previous sins. *Id*. Bishop disclosed to Elder Wells every indiscretion, sin, or other misdeed that had occurred up to that point in his life, including his sexual addiction and previous instances of sexual predation against women. *Id*.

Following Bishop's disclosure of his sexual improprieties to Elder Wells, there allegedly is no indication that the COP acted to investigate these possible crimes or investigate whether, under its own internal policies, Bishop should be subject to Church discipline. *Id*. at ¶ 21. Denson alleges that Church discipline would have protected her and other women by alerting them of Bishop's dangerous propensities. *Id.*

Rather than facing Church discipline for his sexual misconduct, Bishop was called to serve as the President of the MTC. *Id.* at ¶ 22. Bishop was elevated to a position where he had authority over thousands of young women who were training to be missionaries. *Id.* Denson was one of these missionaries under Bishop's authority. *Id*. at ¶ 23.

Denson alleges that she had a traumatic and challenging adolescence, including past physical and sexual abuse. *Id*. She had a baby prior to marriage that she gave up for adoption

3

through LDS Social Services. *Id*. Denson received special permission to serve a mission for her Church and entered the MTC in January of 1984. *Id*. at ¶ 24.

Denson believes that she was singled out by Bishop from her first day arriving at the MTC. *Id*. at ¶ 25. The day Denson entered the MTC, Bishop selected her out of thousands of missionaries to bear her testimony. *Id*. The following meeting Bishop asked her to say the prayer. *Id*. Over the next few weeks, Denson was called out of class on multiple occasions to go to Bishop's office, where she met with him and other sister missionaries who had similar traumatic upbringings. *Id*. at ¶ 26. In these meetings, Bishop would ask Denson and other sister missionaries specific questions about their childhoods and their family's activities in the Church. *Id*. Each woman spoke of their traumatic childhoods and how they had each endured sexual abuse. *Id*.

After several of these meetings, Bishop allegedly began calling Denson to his office alone. *Id*. at ¶ 28. During their one-on-one meetings, Bishop allegedly discussed previous sexual encounters he had with his wife and other women. *Id*. Over time Bishop asked Denson to go with him to a special room in the basement where he did his "preparations." *Id*. at ¶ 29. He escorted her out of his office, down a hallway and through a locked door which led to another hallway or tunnel that was dark and dusty. *Id*. This hallway or tunnel led to what Denson describes as a storage room. *Id*. Bishop unlocked the door to the storage room, escorted Denson inside, turned on the light and closed the door. *Id.* The room had no windows, but was furnished with a small bed, a TV, and a VHS player sitting on a small table. *Id*. There was also a metal chair in the room. *Id*.

Once inside the room, Bishop led Denson to the bed and they talked for a short time. *Id*. ¶ 30. Bishop stated that he preferred this room as a quiet place. *Id*. Bishop then attempted to kiss

Denson, who pushed him away and got up to leave. *Id.* Bishop blocked Denson from the door and pushed her back on the bed. *Id.* at ¶ 31. He grabbed her blouse and tore it open. *Id.* Bishop then allegedly pulled Denson's skirt up, tearing the seam in the back. *Id*. He pulled her pantyhose and garments down. *Id*. He then allegedly exposed himself and briefly penetrated her with his semi-erect penis. *Id*. Denson attempted to push him off, kicking and hitting him. *Id*. He forced her down again. *Id*. Eventually, Denson was able to kick free and pull her garments up enough to get out the door. *Id*. As Denson was leaving the room, Bishop shouted that no will believe you, saying "Look at you, look at me." *Id*.

In approximately 1987 or early 1988, Denson revealed the details of this sexual assault, including Bishop's identity as a sexual assaulter, to her local bishop. *Id*. ¶ 32. The local bishop reported the incident to the local Stake President, who reported the incident to church headquarters in Salt Lake City. *Id*. Shortly thereafter, Elder Carlos Asay, a member of the First Quorum of the Seventy at the time, interviewed Denson and told her he would investigate the incident and let her know the outcome. *Id*. Elder Asay never contacted her about the incident again. *Id*.

Denson brings claims against Bishop and the COP for: 1) Sexual Assault and Battery; 2) Negligent Infliction of Emotional Distress; 3) Intentional Infliction of Emotional Distress; 4) Common Law Fraud; 5) Fraudulent Concealment and Nondisclosure; and 6) Affirmative Injunctive Relief for policy changes. Bishop and COP each filed motions to dismiss arguing that the statute of limitations has tolled for Denson's claims.

## LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). When considering a motion to dismiss for failure to state a claim, all well-pleaded facts are presumed to be true, but conclusory allegations need not be considered. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Because this case involves diversity jurisdiction, the court applies Utah state law to this dispute.

## DISCUSSION

The court will first address the COP's Motion to Dismiss and then address Bishop's Motion to Dismiss.

### The COP's Motion to Dismiss

The COP filed a Motion to Dismiss arguing that all of Denson's claims are time barred by the statute of limitations. Accordingly, the COP seeks to dismiss Denson's claims for: 1) Fraudulent Concealment; 2) Intentional and Negligent Infliction of Emotional Distress; 3) Assault; and 4) An injunction requiring the COP to change their internal policies regarding reporting suspected sexual assault or abuse.

1. *Fraudulent Concealment*

Denson claims the COP engaged in common law fraud by making false representations that Bishop was safe, honorable, and trustworthy. Denson asserts that the COP made these representations even though it had prior knowledge that Bishop was a sexual predator. Denson argues that after the assault she diligently investigated any potential fraud claim by reporting her abuse to the local Bishop, Stake President, and General Authority Carlos Asay. Despite reporting

6

her abuse and investigating possible claims, she had no knowledge that the COP knew that Bishop was a sexual predator prior to being called as the MTC President. She asserts that the COP made false representations regarding Bishop's character when it had knowledge that he was a risk to young female missionaries. Further, Denson asserts that despite her reporting and attempts to investigate the facts surrounding her sexual assault, she had no knowledge that the COP knew that Bishop was a sexual predator until she confronted Bishop in December of 2017. During the recorded confrontation, Bishop allegedly confessed that he reported his past sexual improprieties to high ranking church officials prior to being called as the MTC President.

Utah Code § 78B-2-305(3) states that an action may be brought within three years "for relief on the ground of fraud or mistake; except that the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake." In relation to Denson's fraudulent concealment claim, the parties have identified three cases that are relevant. The cases involve a Utah Supreme Court decision, a 10th Circuit Court of Appeals decision, and a persuasive factually similar District of Idaho decision.

In *Colosimo v. Roman Catholic Bishop of Salt Lake City,* former students brought claims against the Catholic Diocese because a teacher/priest at Judge Memorial High School sexually abused them. Rapp began abusing Ralph Colosimo in 1970. 156 P.3d 806 (2007). The abuse continued until Ralph turned 18. In 1975, Rapp admitted to Ralph that he was a pedophile and that he was also abusing Ralph's younger brother. In 2003, the Colosimos filed suit against Rapp and the Catholic Diocese. The Plaintiffs alleged that the Catholic Diocese knew that Rapp had sexually abused children prior to Ralph, yet deliberately concealed their knowledge of his past abuse. The court recognized that for a claim for fraud "[a] plaintiff is deemed to have discovered his action when he has actual knowledge of the fraud or by reasonable diligence and inquiry

should know the relevant facts of the fraud perpetrated against him" *Id*. at 811. "[A] party is required to make inquiry if his findings would prompt further investigation." *Id*. "Utah courts toll the running of the limitations period if a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct." *Id.* at 816. (internal quotations omitted).

A "plaintiff will be charged with constructive notice of the facts forming the basis of a cause of action only at that point at which a plaintiff, reasonably on notice to inquire into a defendant's wrongdoing, would have, with due diligence, discovered the facts forming the basis for the cause of action despite the defendant's efforts to conceal it." *Id*.

In *Colosimo*, the Utah Supreme Court looked to other states for examples on when it is appropriate to toll the statute of limitations based on fraudulent concealment. In *Helleloid v. Independent School District Number 361,* a teacher sexually abused a mentally disabled student, yet the school district hid its knowledge of the abuse from the student's parents. 149 F.Supp.2d 863. Even though the *Helleloid* court recognized that statute of limitation questions in a fraudulent concealment context are normally questions of fact, unsuited for summary judgment, the court refused to toll the limitations period because the parents had not put forth any effort to inquire into the district's involvement. It reasoned that the doctrine of fraudulent concealment is not intended to protect those who are not vigilant in advancing their legal claims. *Id.* at 871.

The court in *Colosimo* adopted the *Helleloid* courts requirement that a plaintiff must exercise "due diligence" in investigating her claims. *Colosimo,* 156 P.3d at 818. However, the court held "a plaintiff's lack of inquiry may be excused where the defendant has affirmatively concealed from the plaintiff the facts necessary to put the plaintiff on inquiry notice. A plaintiff

cannot be expected to inquire about the existence of a claim that is entirely concealed from him when there is nothing to put him on inquiry notice." *Id.* at 819.

Ultimately the court in *Colosimo* held that the plaintiffs were barred by the statute of limitations because they made no inquiry as to facts of potential fraud after the abuse. The court followed the reasoning in *Helleloid* that the doctrine of fraudulent concealment is not intended to protect those who are not vigilant in advancing their legal claims. However, by discussing the circumstances when a sexual assault victim may sue an institutional defendant, the court in *Colosimo* held that the statute of limitations may be tolled if the plaintiff engages in reasonable inquiry to investigate her claims and due to the concealment of the institutional defendant was unable to uncover the fraud until after the statute of limitations has run.

Denson's case in distinguishable from *Colosimo* because she allegedly exercised due diligence into the factual circumstances surrounding her sexual abuse. Specifically, in approximately 1987 or early 1988, she reported the sexual assault to her local Bishop, Stake President, and General Authority Carlos Asay. Carlos Asay told her that he would investigate the claim further and report back to her. Carlos Asay allegedly never contacted her again about the investigation, if an investigation in fact took place. Due to the COP's alleged concealment when she reported the sexual assault claim to multiple leaders, Denson was unable to discover whether the COP knew that Bishop was a sexual predator prior to calling him as the MTC President. Accordingly, because Denson put forth effort in investigating her claims but was unable to discover that the COP had prior knowledge that Bishop was a sexual predator because of the COP's failure to report back to her, she has satisfied the requirements in *Colosimo* to toll the statute of limitations.

The COP argues that the Tenth Circuit Court of Appeal's holding in *Dummar v. Lummis* is more instructive on when the statute of limitations begins on a fraud claim. 543 F.3d 614 (2008). Denson's fraudulent concealment claim is based on the COP representing that Bishop was a safe, honorable, and trustworthy person when the COP had prior knowledge that he was a sexual predator. The COP argues that the statute of limitations has run because Denson knew when she was raped that the COP's representations that Bishop was safe, honorable, and trustworthy were not true.

In *Dummar,* the plaintiff was driving on a rural road and encountered a bloodied and disheveled man lying in the road. The plaintiff woke the semiconscious man and offered to take him to the hospital. The man instead asked to be taken to his hotel room. The plaintiff had no further contact with the man until nearly nine years later when the man died and the plaintiff learned that the man listed him as a 1/16 beneficiary in his will. The will was handwritten and therefore subject to attack. The intestate beneficiaries probated the will and, at trial, the other beneficiaries produced evidence that the man never left his hotel room for a period of several years. On June 8, 1978, the jury rejected the handwritten will leaving the plaintiff with nothing.

Nearly 30 years later the plaintiff learned additional details about misconduct related to the trial. The misconduct included the fact that the man left his hotel room on multiple occasions, but the beneficiaries in that case affirmatively destroyed records of him leaving. The plaintiff also learned that there were threats and bribes against witnesses to produce false testimony.

The court in *Dummar* held that the statute of limitations barred the Plaintiff's fraud claims because even though the Plaintiff learned additional facts about the concealment of the fraud, he knew at the time of the trial that the statements made by the other beneficiaries that the man never left his hotel room were false. *Id.* at 620. The court reasoned that the plaintiff knew

that the beneficiaries' statements that the man never left his hotel were false at the time of the

trial because he had in fact met the man when he was away from the hotel. *Id*. The fact that the

plaintiff did not have additional proof of the fraud committed by the other beneficiaries is not

enough to toll the statute of limitations because the plaintiff had enough knowledge for the

statute of limitations to begin.

In *Dummar*, the court noted "[n]either party has suggested whether Utah or Nevada law

should apply to the fraud claim, but we need not decide between them. The laws of the two

States are similar in all relevant respects, so the choice of law would not influence the outcome."

*Id.* at 619. The court then cited Nevada law for the elements of fraud, and stated "Utah's

elements, though phrased differently, are in substance the same." *Id*. Later in the opinion, the

court cited to the Alaska Supreme Court as persuasive authority for when the statute of

limitations begins. *Id*. at 620. The court held that the plaintiff "had all the knowledge necessary

to start the limitations period running against him." *Id*.

The court in *Dummar* did not cite or discuss the Utah Supreme Court's *Colosimo*

decision, which was decided a year earlier. Instead it noted that the elements of fraud under

Nevada and Utah law are in substance the same and cited Alaska state law as persuasive.

Therefore, *Dummar* is not as direct of an application of Utah law as the Utah Supreme Court's

decision in *Colosimo*.

The COP argues that Denson's case is similar to *Dummar* because she had knowledge at

the time she was sexually assaulted that the COP's representations that Bishop was safe,

honorable, and trustworthy were not true. The COP argues that such knowledge is similar to

*Dummar* where the plaintiff had knowledge that the deceased man had actually left his hotel

11

room because the plaintiff had met him on the side of the road. However, this holding would be inharmonious with the Utah Supreme Court's holding in *Colosimo*.

Although the court in *Colosimo* ultimately dismissed the plaintiff's claims as time barred, it discussed circumstances when the statute of limitations would be tolled. The court held "once a plaintiff has made a prima facie showing of fraudulent concealment, the plaintiff will be charged with constructive notice of the facts forming the basis of a cause of action only at that point which a plaintiff, reasonably on notice to inquire into a defendant's wrongdoing, would have, with due diligence, discovered the facts forming the basis for the cause of action despite the defendant's efforts to conceal it." *Id.* at 816. The court dismissed plaintiff's claims for fraudulent concealment in *Colosimo* finding "before a plaintiff may rely on the fraudulent concealment doctrine, [s]he must have actually made an attempt to investigate [her] claims and that such an attempt must have been rendered futile as a result of the defendant's fraudulent or misleading conduct." *Id.* The court in *Colosimo* seemed to suggest that had the plaintiffs investigated their claims and were still not able to uncover the fraud, then the statute of limitations for the fraudulent concealment claim would have been tolled. The court noted "it is the existence of the inquiry and the defendant's response that provides the trier of fact with the evidence necessary to evaluate whether there was fraudulent concealment and whether the plaintiff reasonably investigated [her] claims." *Id.* at 818.

If the COP's interpretation of *Dummar* is correct that the plaintiff knew of the fraud once she was sexually assaulted, then the Utah Supreme Court's guidance on when the statute of limitations may be tolled on sexual assault claims against an institutional defendant would not apply. A victim of sexual assault would never be able to toll the statute of limitations against an institutional defendant because the victim would always know at the time they were sexually

12

assaulted, absent repressed memories, that any representation made by the institutional defendant about the safety of the individual at issue was false. Accordingly, the court finds that Denson alleged enough facts in her complaint that she reasonably investigated her claims by reporting her abuse to multiple COP leaders, and that the COP concealed the fact that it allegedly knew that Bishop was a sexual predator.

Some jurisdictions have an even lower burden for tolling the statute of limitations against an institutional defendant for sexual abuse cases. In *Doe v. Presiding Bishop of Church of Jesus Christ of Latter-Day Saints,* the United States District Court for the District of Idaho analyzed a factually similar case involving fraud. 837 F.Supp.2d 1145 (D. Idaho 2011). In *Doe* a scoutmaster allegedly sexually abused and molested the plaintiff as a child during camping trips. On two camping trips, the scoutmaster allegedly sexually abused and molested Doe by fondling him and engaging in oral sex. Doe filed a complaint in 2008 against the LDS Church and the Boy Scouts of America. Doe contended that he did not discover the Defendants' fraud until sometime in 2007 or 2008, when his attorneys learned that the Boy Scout national office became aware as early as the mid-1960s that serious problems existed with Scoutmasters molesting young boys. Doe alleged that the Boy Scouts promoted their program as being safe and described Scoutmasters as wonderful men. The court held that the "statute is tolled when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party." *Id.* at 1151. The court found that the Boy Scouts had a duty to disclose the known dangers of pedophilic scoutmasters because the fiduciary relationship and the Boy Scouts representations about the safety of the program required the disclosure. *Id.* Notably, it appears that the plaintiff

in *Doe* did not diligently investigate his claims until nearly 40 years later. Utah law requires the additional requirement that a plaintiff take steps to investigate potential fraud.

The court therefore concludes that pursuant to Utah law, under the allegations of the complaint, Denson adequately investigated her claims. Denson reported her claims to her local Bishop, Stake President, and General Authority Carlos Asay. Carlos Asay allegedly told Denson that he would inform her of the outcome of the investigation, but never did. Despite her efforts, she was not able to uncover that the COP allegedly had knowledge that Bishop was a sexual predator prior to calling him as the MTC President. Accordingly, pursuant to the Plaintiff's allegations, the statute of limitations did not begin until she confronted Bishop in December of 2017 and learned of the concealment.

> ### 2. *Intentional and Negligent Infliction of Emotional Distress*

Denson alleges that the COP intentionally and negligently inflicted emotional distress on her by not investigating her claims and believing her account of Bishop sexually assaulting her. The COP argues that Denson's claims should be dismissed as barred by the statute of limitations. At the hearing, counsel for the COP conceded that he believed if the statute of limitations was tolled for the fraudulent concealment claim, then the statute of limitations would also likely be tolled for the emotional distress claims. However, the COP argued that the emotional distress claims also fail on the merits.

To succeed on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant "intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and

morality." *Cabaness v. Thomas,* 232 P.3d 486, 499 (Utah 2010). "To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair." *Franco v. The Church of Jesus Christ of Latter-Day Saints*, 21 P.3d 198 (Utah 2001).

The Utah Supreme Court in *Franco* analyzed a case where a former church member brought a claim for intentional infliction of emotional distress resulting from members of her church ostracizing her after she reported incidents of sexual abuse to the police because of how church leaders handled her claims. *Id.* The court dismissed the intentional infliction of emotional distress claims holding that the Church did not act with the "purpose of inflicting emotional distress." *Id.* at 207. The court held that "[t]o be considered outrageous, the conduct must… be more than unreasonable, unkind, or unfair. Furthermore, an act is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal." *Id.* (internal quotations omitted).

Denson asserts that the COP caused her emotional distress by taking no action to investigate her claims against Bishop for sexual assault. Here, Denson asserts that the COP's inaction caused her emotional distress. These assertions do not rise to the high standard of purposefully inflicting emotional distress. Accordingly, Denson's claim for intentional infliction of emotional distress is dismissed as a matter of law.

Similarly, Denson's claim for negligent infliction of emotional distress fails. Denson argues that her distress stems from the COP not believing her and not investigating her claim of sexual assault. The Utah Supreme Court stated that "the emotional distress suffered must be severe; it must be such that 'a reasonable person normally constituted would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Harnicher v. University of Utah Medical Center,* 962 P.2d 67, 69 (Utah 1998). The Utah Supreme Court has

also listed as a factor "whether the tortious conduct consists of an affirmative act or merely an omission." *B.R. ex rel Jeffs v. West*, 275 P.3d 228 (Utah 2012). Courts have cautioned against expanding causes of action for negligent infliction of emotional distress because of the uncertainty in ascertain damages for mental suffering. *Mower v. Baird,* 2018 WL 3322749 (Utah 2018).

Here, Denson asserts that her claim for negligent infliction of emotional distress is based on the COP's inaction. The court concludes that the COP's alleged inaction in investigating Denson's sexual assault is not enough to establish a claim for negligent infliction of emotional distress. However, such inaction is relevant under Denson's fraudulent concealment claim. Accordingly, Denson's claim for negligent infliction of emotional distress is dismissed.

### 3. *Assault*

The COP asserts that Denson's claim for assault must be dismissed because she does not claim that the COP sexually assaulted her. Denson's claim is based on Bishop sexually assaulting her, not the COP. Accordingly, Denson's claim against the COP is dismissed.

### 4. *Affirmative Injunctive Relief*

Denson seeks an affirmative injunction requiring the COP to change its policies relating to reporting suspected sexual abuse. The COP argued that this claim should be dismissed because an injunction is not a claim, but a remedy for other claims. Denson did not oppose the COP's arguments for dismissing the affirmative injunction claim. Accordingly, Denson's claim for an affirmative injunction is dismissed.

**Joseph Bishop's Motion to Dismiss**

Denson asserts claims against Bishop for: 1) Sexual Assault; 2) Intentional and Negligent Infliction of Emotional Distress; and 3) Fraud. Denson's claims against Bishop arise from his

16

alleged sexual assaul of her in early 1984. Bishop seeks to dismiss all of the claims against him because the statute of limitations has run. For the following reasons, Bishop's motion to dismiss is granted based on statute of limitations grounds.

### 1. Sexual Assault

According to Denson's complaint, Bishop assaulted her in the mid-1980s. A person commits the civil tort of battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Wagner v. State*, 2005 UT 54, ¶ 16. Under Utah's catch-all statute of limitation, Denson therefore had until early 1988 to bring the action. *See* Utah Code § 78B-2-307(3). Accordingly, Denson's claim against Bishop for sexual assault is barred by the statute of limitations.

### 2. Intentional and Negligent Infliction of Emotional Distress

Denson's claims for emotional distress appear to be based against the COP and not Bishop. But if the claims were against Bishop, then, like battery, the causes of action fall under Utah's catch-all statute of limitations and Denson's causes of action therefore expired in approximately 1991. Accordingly, Denson's claim for emotional distress against Bishop is dismissed.

### 3. Fraud

Denson's claim for fraud also appears to be against the COP, not Bishop. If Denson asserts fraud against Bishop, then the claim fails. Denson does not assert that Bishop made any false representations regarding his character. If Bishop did make false representations about his character, then Denson became aware that those representations were false when Bishop sexually

17

assaulted her. Therefore, her fraud claim would become time barred sometime in 1990. Utah

Code §78B-2-305(3). Accordingly, Denson's claim for fraud against Bishop is dismissed.

## CONCLUSION

For the reasons stated above, the COP's Motion to Dismiss is GRANTED in part and

DENIED in part (Dkt. No. 12) and Bishop's Motion to Dismiss is GRANTED in its entirety.

(Dkt. No. 11).

Dated this 13th day of August, 2018.

BY THE COURT:

DALE A. KIMBALL,
United States District Judge

18